IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| Brandi Derrick, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Cause No. 5:18-cv-00019 |
| v. | § | |
| | § | Jury Trial Demanded |
| Best Fender Products, Inc., John R. McCollum | § | |
| a.k.a Buddy McCollum, O.C. Ross, Jeffrey | § | |
| Jackson a.k.a Jeff Jackson, and Erin Thomas, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF BRANDI DERRICK'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Brandi Derrick ("Derrick"), who commences this lawsuit in order to bring claims against her prior employer and colleagues for discriminatory and fraudulent conduct in violation of federal and state law and corporate misconduct in violation of state law.

## I.  SUMMARY OF CLAIMS

### A.  Discrimination Claims.

1.      Best Fender Products, Inc. ("BFPI") is a privately-held corporation which operates trailer-part manufacturing plants in Northeast Texas and Southeast Oklahoma. BFPI has approximately 180 to 200 employees.

2.      Derrick, a female, began working for BFPI in approximately February of 2006 where she was initially hired as an accountant and later promoted to chief financial officer ("CFO").  Throughout her employment, Derrick never received an unsatisfactory review.  It,

therefore, came as a surprise when Derrick's employment was abruptly terminated by a late Sunday evening phone call in October of 2016.  Derrick was forty-four years old at the time and replaced by a younger male in his thirties.

3.     O.C. Ross ("Ross"), BFPI's vice president, made the call.  His message to Derrick was plain and simple—"don't show up for work tomorrow."  Demanding more reason, Derrick set up a meeting with BFPI's president, John R. McCollum ("McCollum"), who informed her that she was fired based upon Ross's discovery of her out-of-office relationship with a co-worker—a relationship which, according to McCollum, could reflect poorly on the company's reputation.

4.     Derrick disagrees insofar as the co-worker she had been seeing was entirely outside of her chain-of-command.  Derrick further asserts that BFPI had neither a written nor unwritten policy prohibiting co-worker relationships and that several co-worker relationships have actually occurred in the past for which similarly-situated males faced no punishment.

5.     Derrick, therefore, believes that she was terminated on the basis of her sex and age, or, alternatively, on the basis her sex or age alone, and, thus, brings claims against BFPI and its director/officers, McCollum, Ross, Jeffrey Jackson ("Jackson"), and Erin Thomas ("Thomas"), for violations of Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act of 1967, as amended, and Section 21.051 of the Texas Labor Code, as amended.

**B.  Fraudulent Securities Conduct and Corporate Misconduct.**

6.     Despite being terminated as an employee, Derrick is still a shareholder of BFPI, having purchased 8,100 shares of common stock from McCollum in 2015.  Such ownership turns out to be futile, however, to the extent BFPI and its director/officers have denied Derrick distributions, dividends, or profits since her termination and are further refusing to allow Derrick

to examine and inspect corporate books and records.  Derrick is unable to sell her stock because it is unregistered and, therefore, carries transfer restrictions.  Worst of all, though, Derrick was induced to purchase the stock on credit and is now stuck with an egregious monthly payment of $1,516.12 for which she lacks sufficient income.

7.      A review of the transaction through which McCollum offered, sold, and issued the stock reveals multiple instances of securities fraud and broker misconduct.  Derrick, therefore, brings claims against McCollum for violations of the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, the Texas Securities Act, as amended, and the Texas Business and Commerce Code, as amended.

8.      Derrick also brings a claim against BFPI and its director/officers for violating her statutory right to examine books and records, claims against McCollum, Ross, Jackson, and Thomas for breaching their formal and informal fiduciary duties, a claim against McCollum for common law fraud, and a claim against all named defendants for conspiracy.

## II.  JURISDICTION AND VENUE

9.      Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction of Derrick's claims which arise under federal law.  This Court also has jurisdiction over Derrick's claims which arise under state law insofar as the federal and state claims are so related that they form the same case/controversy under Article III of the Constitution.

10.      Pursuant to 28 U.S.C. §1391(b)(2), venue is proper in this Court because a substantial part of the events and omissions giving rise to Derrick's claims occurred in this District.

## III.  PARTIES

11.     Derrick is natural person who resides in Titus County, Texas at the following address:  225 Tennison Road, Apartment 5204, Mount Pleasant, Texas 75455.  Derrick may be served with pleadings through her lead attorney, Cory J. Floyd, at the following address:  Norton & Wood, L.L.P., 315 Main Street, Texarkana, Texas 75501.

12.     BFPI is a domestic for-profit corporation organized under the laws of the State of Texas whose principal place of business is located in Titus County, Texas.  BFPI may be served with process through its registered agent, Lynn Ross, Jr., at the following address: 3650 Lovell Avenue, Fort Worth, Texas 76107, and/or its attorney, Richard L. Bourland, at the following address:  Griffith, Jay, and Michel, LLP, 2200 Forest Park Boulevard, Fort Worth, Texas 76110.

13.     McCollum is a natural person who resides in Titus County, Texas.  McCollum may be served with process at his last-known address: 2364 Texas Highway 49, P.O. Box 1258, Mount Pleasant, Texas 75476.

14.     Ross is a natural person who resides in Morris County, Texas.  Ross may be served with process at his last-known address: 427 County Road 3347, Omaha, Texas, 75571.

15.     Jackson is a natural person who resides in Morris County, Texas.  Jackson may be served with process at his last known address: 307 Big League Bend, Omaha, Texas, 75571.

16.     Thomas is a natural person who resides in Hopkins County, Texas.  Jackson may be served with process at her last-known address: 440 County Road 3648, Sulphur Springs, Texas, 75482.

## IV.  FACTUAL ALLEGATIONS

17.    In addition to the allegations set forth in the preceding paragraphs, Derrick further alleges as follows:

**A.  The Offer, Sale, and Purchase of Private Unregistered Stock.**

18.    BFPI was incorporated on November 22, 1993, at which time McCollum was appointed as its initial director.  To Derrick's knowledge, McCollum remains the sole director today.

19.    At or around the time of incorporation, it is believed that McCollum purchased common stock in BFPI, although the exact amount is unknown at this time.

20.    Later, in 2014, McCollum presented Derrick, Jackson, and Thomas with what he called a "unique opportunity" to each own ten percent (10%) of the company by purchasing 8,100 shares of already-issued stock from him directly for $35.00 per share.

21.    McCollum knew that Derrick, Jackson, and Thomas lacked the assets necessary to allow them to pay the $283,500.00 purchase price.  Therefore, McCollum made them a "special offer" through which he would loan them each the $283,500.00 purchase price in exchange for their execution and delivery of promissory notes payable to him.

22.    In order to induce Derrick to enter into such transaction, McCollum knowingly made material misrepresentations to Derrick and further failed to disclose material facts to Derrick, thereby causing representations that he had made to be misleading.

23.    Examples of material misrepresentations made by McCollum to Derrick include but are not limited to statements and information similar to the following:

-        "The purchase is a safe investment."

-       "The purchase involves little to no risk."

-       "The purchase will pay for itself."

-       "The purchase will only increase in value."

-       "You don't need to worry about a retirement plan.  This is your retirement plan!  It will take care of you and your kids."

-       "As a shareholder, you will receive monthly dividends in addition to your salary which will more than cover your monthly note payments."

-       The number of issued and outstanding shares as of November 12, 2015 and the percentages of ownership as of November 12, 2015.

-       That Derrick would become the owner of 10% of the company upon her purchase of the 8,100 shares on November 12, 2015.

24.     Examples of material facts and information that McCollum failed to disclose to Derrick include but are not limited to:

-       The fact that the stock was unregistered.

-       The fact the McCollum was an unregistered dealer, broker, and/or agent.

-       The risks associated with owning private unregistered stock.

-       The limitations of transferring private unregistered stock.

-       The fact that if Derrick were terminated at any time and for any reason, she would still be liable for payments on the note, regardless of lack of income or whether the promised distributions were being made.

-       The fact that BFPI would stop making distributions, dividends, or profits to Derrick upon her termination.

- The fact that McCollum planned to sell the promissory note and security agreement Derrick would ultimately sign to BFPI for immediate cash and/or assets.

25.     McCollum made such misrepresentations and omissions both orally and in writing, directly and indirectly through his attorney, with written communications being sent by mail and/or e-mail.  McCollum further mailed and e-mailed various documents relevant to the transaction, either directly or indirectly through his attorney.

26.     McCollum did not perform an adequate investigation into the outstanding and issued stock of BFPI before making the offer to Derrick.

27.     In reliance on McCollum's representations, Derrick ultimately agreed to purchase the 8,100 shares offered to her for the purchase price of $283,500.  Derrick finalized such purchase on November 12, 2015 by signing a promissory note and security agreement wherein she agreed to pay McCollum $1,516.12 per month beginning on December 12, 2015 and granted McCollum a security interest in her 8,100 shares of stock.  In return, McCollum provided Derrick with a stock certificate evidencing her ownership of 8,100 shares of common stock in BFPI.

28.     Jackson and Thomas also purchased 8,100 shares each from McCollum on November 12, 2015, but the exact terms of said parties' transactions are unknown to Derrick.

29.     Also on November 12, 2015, McCollum, Ross, Jackson, Thomas, and Derrick signed a document stating that ownership on such date was divided as follows: McCollum owned 48,600 shares, Ross owned 8,100 shares, Derrick owned 8,100 shares, Jackson owned 8,100 shares, and Thomas owned 8,100 shares—amounting to a total of 81,000 shares of issued and outstanding stock.

30.     After collecting Derrick's first monthly note payment, McCollum signed a document on January 4, 2016 wherein he transferred the note and security agreement signed by Derrick to BFPI in exchange for immediate cash and/or assets.

31.     Also on January 4, 2016, McCollum signed a "redemption agreement" wherein he claimed to own more shares of stock than what he had previously represented to Derrick on November 12, 2015.

**B.  The Wrongful Termination.**

32.     On or about October 9, 2016, Ross heard from a non-employee friend that Derrick had been on a date with BFPI's production supervisor.

33.     Neither Derrick nor the supervisor were in the other's chain of command. Furthermore, Derrick's office and the supervisor's office were in different areas of BFPI's main office.  In sum, their relationship in no way affected their abilities to perform their respective duties, nor caused a disruption in their work environments.

34.     Nevertheless, the officers of BFPI terminated Derrick, ceased her pay and benefits beginning on January of 2016, and hired a younger male with less experience in the trailer-manufacturing industry.  Derrick knew that BFPI had been in contact with the male prior to her termination but was under the belief that he was being considered for a position other than hers.

35.     Derrick is aware of at least two instances in which a male superior carried on a relationship with a subordinate at BFPI and did not face any form of punishment, much less termination.  Derrick is also aware of various other instances in which men were treated differently than similarly-situated women at BFPI.  For example, BFPI's male officers (McCollum, Ross, and Jackson) were all given company vehicles to drive, while Derrick and Thomas (the female officers)

were denied their request for the same despite the fact that they had to travel just as often between plants as McCollum and Ross.  Derrick and Thomas were also paid less than McCollum, Ross, and Jackson, despite the fact they all shared similar duties as officers of the company.  In fact, when Jackson was hired, he was immediately paid more than Thomas, who had been working for BFPI for six years prior, and Derrick, who had been working for BFPI for one year prior.

36.     In addition to ceasing Derrick's salary, BFPI also stopped making distributions, dividends, or profits to Derrick as a shareholder following her termination.

## V.  CLAIMS FOR RELIEF

37.     With regard to each of the following claims for relief, Derrick realleges each and every matter contained in the previous paragraphs of this complaint.

### A.  Sex Discrimination

38.     BFPI is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964 and Section 21.051 of the Texas Labor Code insofar as it is engaged in an industry affecting commerce and has more than fifteen employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

39.     McCollum, Ross, Jackson, and Thomas are also "employers" within the meaning of Title VII and Section 21.051 insofar as they are agents of BFPI.

40.     Derrick is an "employee" within the meaning of Title VII and Section 21.051 insofar as she was hired to work for the company under the supervision and control of another.

41.     As a female, Derrick is a member of a class protected by Title VII and Section 21.051.

42.     On October 9, 2016, Derrick was terminated as CFO of BFPI, causing her to suffer, among other things, loss of income, loss of employment benefits, loss of employment opportunities, mental anguish, emotional distress, and humiliation—all of which Derrick is reasonably certain to continue to suffer in the future.

43.     At the time of her termination, Derrick was meeting BFPI's expectations and performing her duties to BFPI's satisfaction.  In fact, Derrick had never received a negative review in all her ten years of employment.  Derrick was, therefore, qualified for the position she held.

44.     The reason given for Derrick's termination was that her relationship could reflect poorly on the company's reputation.  However, Derrick disagrees insofar as the co-worker she had been dating was entirely outside of her chain of command.  Furthermore, Derrick is aware of several co-worker relationships that have occurred in the past for which similarly-situated males faced no punishment.

45.     In sum, Derrick contends that she faced discrimination and disparate treatment on the basis of her sex and that BFPI's conduct violates Title VII of the Civil Rights Act of 1964, as amended, and Section 21.051 of the Texas Labor Code, as amended.

**B.  Age Discrimination**

46.     BFPI is an "employer" within the meaning of the Age Discrimination in Employment Act of 1967 and Section 21.051 of the Texas Labor Code insofar as it is engaged in an industry affecting commerce and has more than twenty employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

47.     McCollum, Ross, Jackson, and Thomas are also "employers" within the meaning of the ADEA and Section 21.051 insofar as they are agents of BFPI.

48.     Derrick is an "employee" within the meaning of the ADEA and Section 21.051 insofar as she was hired to work for the company under the supervision and control of another.

49.     Being over the age of forty at the time of her termination, Derrick was and is a member of the class protected by the ADEA and Section 21.051.

50.     On October 9, 2016, Derrick was terminated as CFO of BFPI, causing her to suffer, among other things, loss of income, loss of employment benefits, loss of employment opportunities, mental anguish, emotional distress, and humiliation—all of which Derrick is reasonably certain to continue to suffer in the future.

51.     At the time of her termination, Derrick was meeting BFPI's expectations and performing her duties to BFPI's satisfaction.  In fact, Derrick had never received a negative review in all her ten years of employment.  Derrick was, therefore, qualified for the position she held.

52.     Following Derrick's termination, BFPI replaced Derrick with a younger male who is not a member of the class protected by the ADEA and Section 21.051 and who was less qualified than Derrick because, among other reasons, he lacked experience in the trailer-manufacturing industry.

53.     Derrick asserts that but-for her age, she would not have been terminated.  Derrick further contends that BFPI violated the Age Discrimination in Employment Act of 1967, as amended, and Section 21.051 of the Texas Labor Code, as amended.

## C.  Securities Fraud and Broker Misconduct

<u>Improper Resale of Unregistered Stock</u>

54.     The stock sold by McCollum to Derrick was unregistered.

55.     More specifically, the stock was both control stock and restricted stock.

56.     The sale did not qualify for a statutory or regulatory exemption allowing sale of unregistered stock, nor did McCollum have a permit to make the sale.

57.     Accordingly, McCollum's resale of the unregistered stock was improper under the Securities Act of 1933, the Securities Exchange Act of 1934, and the Texas Securities Act.

<u>Failure to Register as Dealer/Broker/Agent</u>

58.     At the time of the sale, McCollum was engaged in the business of buying and selling securities for his own account and/or in the business of effecting transactions in securities for the accounts of others.

59.     Accordingly, McCollum was a dealer and/or broker and/or agent as defined by the Securities Act of 1933, the Securities Exchange Act of 1934, and/or the Texas Securities Act, and was, therefore, subject to the requirements for dealer/broker/agent registration with the U.S. Securities and Exchange Commission (the "SEC") and the Texas State Securities Board (the "TSSB").

60.     McCollum was not registered with the SEC or the TSSB at the time of the sale, thereby making his sale to Derrick improper under the Securities Act of 1933, the Securities Exchange Act of 1934, and the Texas Securities Act.

<u>Improper Use of Mail and Interstate Commerce</u>

61.     In offering and selling the stock to Derrick, McCollum used mail and e-mail to:

-       employ a scheme to defraud Derrick.

-       obtain money from Derrick through untrue statements of material fact and omissions of material facts necessary to make certain statements not misleading.

-       engage in a transaction which would operate as a fraud/deceit on Derrick.

- circulate letters and communications to Derrick which promoted BFPI's stock without fully disclosing that McCollum was receiving consideration from BFPI in exchange for his promotion efforts.

- sell, transport, and deliver unregistered stock to Derrick despite the fact such stock was required to be registered.

- use and employ a manipulative and deceptive device and a contrivance in contravention of 17 C.F.R. § 240.10b-5.  Specifically, McCollum: (i) employed a scheme to defraud Derrick, (ii) made untrue statements of material fact and omissions of material fact necessary to make certain statements not misleading, and (iii) engaged in an act which would operate as a fraud/deceit on Derrick.

- induce and effect the purchase and sale of unregistered stock—in his capacity as a dealer/broker unassociated with a dealer/broker entity—despite the fact he was not properly registered with the SEC.

- knowingly make false statements of material fact and false promises (on which Derrick relied) in order to induce Derrick to purchase unregistered stock through a transaction from which McCollum directly benefitted.

62. Such conduct violates various provisions of the Securities Act of 1933, the Securities Exchange Act of 1934, and the Texas Securities Act, as well as Section 27.01 of the Texas Business and Commerce Code.

## D.  Corporate Misconduct

<u>Denial of Statutory Right to Examine and Inspect Books and Records</u>

63.     Since November 12, 2015, Derrick has owned greater than five percent of all of BFPI's outstanding shares of common stock, thereby entitling her to the statutory right to immediately examine and inspect the corporate books and records of the company.

64.     On March 21, 2017, more than six months after Derrick became a shareholder, Derrick, through her attorney, made a written demand on BFPI, through its attorney, to examine and inspect BFPI's books and records based upon a proper purpose—to investigate Derrick's belief that representations made by BFPI and its employees may render them civilly liable to Derrick.

65.     BFPI, through its attorney, refused Derrick's demand, thereby violating Derrick's rights under Sections 21.218 and 3.153 of the Texas Business and Organizations Code.

66.     Derrick represents that she has no remedy other than a writ of mandamus against BFPI and its officers, employees, agents, servants, and record keepers.

<u>Corporate Mismanagement / Malicious Refusal to Declare Dividends / Breach of Trust</u>

67.     McCollum is not only the president of BFPI but is also its majority shareholder and sole director.

68.     BFPI is a profitable company which has the ability to pay its shareholders reasonable dividends as it has always done in the past.

69.     After Derrick was terminated, McCollum refused to declare and/or pay dividends for the malicious purpose of preventing Derrick from receiving any kind of profit from BFPI and for the malicious purpose of lowering the value of Derrick's stock.

70.     Derrick also believes that McCollum has been distributing the corporation's profits exclusively among himself, Ross, Jackson, and Thomas through means other than distributions, including inflation of said person's salaries.

## E.  Breach of Fiduciary Duties

### Formal Fiduciary Duties

71.     To Derrick's knowledge, McCollum was the sole director of BFPI at the time he sold Derrick, Jackson, and Thomas his personal stock.  McCollum was also the president.

72.     McCollum disposed of his stock in competition with BFPI, thereby depriving BFPI of the opportunity to issue new stock for a purchase price.

73.     By transferring the note to BFPI in exchange for immediate cash and/or assets, McCollum diverted funds and profits from BFPI and further failed to exert all efforts on behalf of BFPI to net the greatest possible return for the company.

74.     In sum, McCollum used BFPI for his personal profit despite his duty to act in good faith for the benefit of BFPI.  Such conduct constitutes a breach of McCollum's fiduciary duties of loyalty, care, and obedience as a director and officer of BFPI, which has ultimately harmed Derrick as an individual shareholder.

### Informal Fiduciary Duties

75.     Prior to her termination, Derrick had special relationships of trust and confidence with McCollum, Ross, Jackson, and Thomas based on friendship.

76.     Such relationships formed prior to and/or independent from their business relationships, thereby giving rise to informal fiduciary duties between Derrick and said persons.

77.     By terminating Derrick and withholding dividends, distributions, profits, and corporate rights from Derrick, McCollum, Ross, Jackson, and Thomas have breached their informal fiduciary duties to Derrick.

**F. Fraud**

78.     In addition to the fraudulent securities claims made in the preceding paragraphs, Derrick also brings claims against McCollum for common law fraud under Texas law.  In support thereof, Derrick would show that McCollum knowingly made false misrepresentations and promises to Derrick in order to induce her to enter into the stock transaction, all of which were material, and further that McCollum intended at all times that Derrick rely on such statements, which Derrick justifiably did, thereby directly and proximately causing economic injury to Derrick.

**G. Conspiracy**

79.     BFPI, McCollum, Ross, Jackson, and Thomas are each a member of a combination of two or more individuals/entities.

80.     The objective of BFPI, McCollum, Ross, Jackson, and Thomas was and is to accomplish an unlawful purpose.  In particular, the objective of said persons was and is to discriminate against Derrick, breach their fiduciary duties to Derrick, and deprive Derrick of distributions, dividends, profits, and corporate rights—all in order to enrich themselves.

81.     BFPI, McCollum, Ross, Jackson, and Thomas all had a meeting of minds with regard to said objective.

82.     One or more of said persons then took overt acts in furtherance of the conspiracy by terminating Derrick's employment, refusing to issue her dividends, distributions, or profits, and denying her the right to examine corporate books and records.

83.     Derrick has suffered damages as a proximate result of said actions.

## VI.  DEMAND FOR RELIEF

84.     Derrick demands recovery of all relief, at law and in equity, to which she may show herself justly entitled.

85.     Derrick contends that such relief includes but is not necessarily limited to recovery of actual, compensatory, and exemplary damages, including but not limited to recovery of $2,673,000.00, which represents the value of Derrick's stock according the valuation signed by BFPI's shareholders on September 1, 2016, plus back pay, lost employment benefits, out-of-pocket expenses for Derrick's job search, attorney's fees, court costs, expert witness fees, costs of depositions, profits realized by McCollum, and a writ of mandamus commanding, ordering, and directing BFPI and its officers, employees, agents, servants, and record keepers to allow Derrick and/or her authorized agent(s), including but not limited to Norton & Wood, L.L.P., to inspect the books and records of BFPI and to make extracts of the same.

## VII. CONDITIONS PRECEDENT

86.     All conditions precedent to Derrick's claims for relief have been performed or have occurred, including but not limited to the filing of an administrative charge for sex and age discrimination with the Equal Employment Opportunity Commission and all relevant FEPAs and the receiving of a "right-to-sue" letter in return.

## VIII.  PRAYER AND CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Derrick prays that BFPI, McCollum, Ross, Jackson, and Thomas be cited to appear and answer this complaint and that, upon final hearing, this Court issue the relief requested herein and enter judgment in favor of Derrick on all matters pled herein.

Respectfully submitted,

NORTON & WOOD, L.L.P.
315 Main Street
Texarkana, Texas 75503
Telephone: (903) 823-1321
Facsimile: (903) 823-1325

By: /s/ Cory J. Floyd
    Cory J. Floyd
    Texas Bar No. 24049365
    cory@nortonandwood.com

COUNSEL FOR BRANDI DERRICK